UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>)<br>) |
| v. | )<br>) Criminal No. 25-cr-10400-PBS |
| ARIANA FOLEY, | )<br>)<br>) |
| Defendant | ) |

**GOVERNMENT'S SENTENCING MEMORANDUM**

*"I will abstain from whatever is deleterious and mischievous, and will not take or knowingly administer any harmful drug. I will do all in my power to maintain and elevate the standard of my profession, and will hold in confidence all personal matters committed to my keeping and all family affairs coming to my knowledge in the practice of my calling. With loyalty will I endeavor to aid the physician in his work, and devote myself to the welfare of those committed to my care."*

Since 1893, graduating nurses have recited the above words before entering the nursing profession. Florence Nightingale Pledge, https://nursing.vanderbilt.edu/news/florence-nightingale-pledge/ (Nov. 3, 2010) (last visited Jan. 7, 2026). At the core of a nurse's job is the need to care for patients with the highest degree of competence and altruism.

On July 16, 2022, Ariana Foley, a former registered nurse, abandoned her pledge as she diverted midazolam while purportedly caring for an intubated patient in the intensive care unit at a Boston based hospital. Stealing drugs from a hospital to fuel a drug addiction is, at best, "deleterious and mischievous." The defendant not only harmed herself, but she also undermined the integrity of the hospital's drug control system, which is necessary to ensure the safe delivery of powerful drugs to vulnerable patients in hospitals throughout the country.

On November 4, 2025, the defendant pleaded guilty to a one-count Information charging her with acquiring a controlled substance by fraud, deception, and subterfuge, in violation of 21 U.S.C. § 843(a)(3). The Court should impose a sentence of incarceration. The government is

requesting incarceration for a period of three months; supervised release for 12 months, and a mandatory special assessment of $100.

I.      **Factual Background**

The facts of this case are set forth in the Probation Department's Presentence Investigation Report ("PSR") and summarized herein. PSR, ¶¶ 6-17. From approximately December 2018 through August 2022, Foley was a registered nurse working at a hospital based in Boston, Massachusetts. *Id.* at ¶ 7. On July 16, 2022, she worked an overnight shift where she was assigned to Patient 1. *Id.* at ¶ 8. Patient 1 was intubated and immobile but was at times able to open her eyes. *Id.* Omnicell data that shows that at 1:08 a.m., the defendant checked out a bag of Versed (midazolam).[1] *Id.* Patient 1 was no longer taking Versed as of July 13. Foley did not scan the Versed into Patient 1's chart. *Id.* At approximately 2:30 a.m., Foley called Nurse 1 and asked her to pull Propofol and Fentanyl for Patient 1. *Id.* at ¶ 9. Omnicell data confirms that, at 2:36 a.m., Nurse 1 checked out Propofol and Fentanyl and, according to Nurse 1, she handed these bags to Foley. PSR, ¶ 9. Although Patient 1 was prescribed both of these medications, the medication was not scanned into Patient 1's chart. *Id.*

At approximately 3:30 a.m. the emergency alarm went off in Patient 1's room. *Id.* at ¶ 10. Nurse 1 entered the room and found the defendant slumped over, leaning on the wall where the emergency alarm string hung. *Id.* According to Nurse 1, she went over to Foley and shook her until Foley opened her eyes. *Id.* She noted that Foley was unsteady on her feet. *Id.* Foley told Nurse 1 that she was fine and that she had pulled the emergency cord by mistake. PSR, at ¶ 10. Around 4:28 a.m., Foley again asked Nurse 1 to pull a bag of Fentanyl for Patient 1. *Id.* Nurse 1

---

[1] Omnicell is a brand of automated medication and supply dispensing system used in healthcare to securely store, track, and dispense medications and medical supplies.

questioned the defendant about why her patient needed additional Fentanyl. The defendant stated that she needed to give Patient 1 a bolus of Fentanyl and needed the extra bag because she had lost some of the liquid Fentanyl in the original bag when priming the IV line. *Id.* at ¶ 11. Nurse 1 provided the bag of Fentanyl to Foley. *Id.* This medication was not scanned into Patient 1's record. *Id.*

At approximately 6 a.m., Foley approached Nurse 1 and stated the bag was leaking and that she had not used it. *Id.* at ¶ 12. Nurse 1 and Foley then disposed of the bag of Fentanyl together. PSR, at ¶ 12. Foley then asked Nurse 1 to pull another bag of Fentanyl for Patient 1 to replace the wasted bag. *Id.* Nurse 1 pulled a third bag for Foley at 6:18 a.m. *Id.* This bag of Fentanyl was also not scanned into Patient 1's medical records. *Id.* The next nurse responsible for Patient 1 came on shift around 6:40 a.m. and found Patient 1's room in disarray. *Id.* at ¶ 13.

The following items were photographed in the room: an empty Versed bag on the counter; three syringes on the floor (one was found to have a mixture of Fentanyl and Versed; one had saline; and one had only Versed); a full bag of Fentanyl[2] hanging on the pole, but the tubing was dry and pump was not running; a Propofol bag that was hanging but was paused; a feeding bag that was improperly attached to Patient 1; and an IV tubing spike that was connected to one of Patient 1's central line ports but was hanging on the floor instead of attached to a bag. *Id.* at ¶ 13.

After the scene was cleaned, Foley was removed and questioned by hospital administrators. *Id.* at ¶ 14. She had alcohol swabs and three syringes in her pocket, one of which appeared to be used. PSR, at ¶ 14. The incident on July 17 was the culmination of a pattern of suspicious

---

[2] This bag was later determined to be diluted to 0.388mcg/ml: the concentration should be 10 mcg/ml. Only this one bag of Fentanyl was found in Patient 1's room, and one bag of Fentanyl was disposed of with Nurse 1—the third bag of Fentanyl was never recovered. This diluted bag of Fentanyl was inadvertently destroyed by the laboratory and is no longer available for testing.

behavior. *Id.* at ¶ 17. According to co-workers, the defendant often seemed unalert and exhausted, and others had seen unlabeled syringes in her pocket on occasion. *Id.*

## II.     The Probation Department Correctly Calculated the Sentencing Guidelines

The sentencing guidelines are not in dispute. The Probation Department correctly found the defendant's total offense level to be 6, which includes a 2-point enhancement for the defendant's abuse of trust or use of a special skill. PSR, ¶¶ 21-30. With no criminal history, the defendant's guideline sentencing range is 0-6 months.

## III.    The Defendant's Actions Warrant the Sentence Requested

The factors in 18 U.S.C. § 3553(a) support the requested sentence, which is "sufficient, but not greater than necessary" to achieve the goals of sentencing. *United States v. Dixon*, 449 F.3d 194, 203-04 (1st Cir. 2006). A sentence of incarceration is supported based upon the nature and circumstances of the offense and the need to deter this conduct generally and specifically. It also would not create unwarranted sentence disparities among defendants who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a).

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant Support the Requested Sentence

The defendant's crime is serious. The defendant put a defenseless intubated patient in danger to satisfy her need for drugs. In choosing to charge this case and in fashioning the recommended sentence, the government has considered that the defendant has struggled with substance abuse, and that it fueled her crime. The Court also noted her addiction at the Rule 11 hearing. Tr. 2:21-3:3. But the impetus for her crime should not overshadow its impact. The defendant's conduct put her patients, like Patient 1, at risk. When someone goes to a hospital, or transports a loved one to a hospital, they deserve to know they will be well cared for. The defendants' patients and their families trusted the defendant to be, at *minimum*, sober and free of

any impairment.  She breached that trust.  Patient 1 was someone's mother, sister, wife, and friend.  Patient 1 did not receive the care she deserved.

While it is regrettable that the defendant struggles with substance abuse, that does not excuse her conduct.  Nor does her ADHD diagnosis or learning struggles.  To be clear, the government is sympathetic to the personal hardships the defendant has endured and credits the defendant for the recent efforts she has made to address her substance abuse issues.  PSR at ¶¶ 57-63.  But this case is not about Foley's mental health; it is about the choices she made, and the position she placed herself in.  Millions of people struggle with learning disabilities, ADHD, and other personal tragedies.  They do not commit federal crimes and steal drugs from intubated hospital patients.

In her sentencing memorandum, and after admitting through counsel that she "does not really remember" what happened, the defendant appears to raise issues with respect to a lack of testing of the fentanyl bags, apparently now affirmatively disputing that she checked out numerous bags of fentanyl that evening.  Rule 11 Transcript, 15:24-16:3.  This is relevant conduct regardless of whether it impacts the sentencing guidelines.  For the avoidance of doubt, and in light of the position taken in the defendant's sentencing memoranda, the government has submitted additional supporting documentation to probation.

B. There is Significant Value in Deterring Similar Crimes

At the core of the government's requested sentence is the need for general deterrence, specific deterrence, and the protection of the public.  Prescription drug abuse among health care providers is prevalent, more so than in the general population.  When abusing drugs, health care workers often steal drugs from medical settings, to which they have easy access.  *See, e.g.,* Some Health Workers Suffering From Addiction Steal Drugs Meant For Patients, http://npr.org/2020/10/05/918279481/some-healthworkers-suffering-from-addiction-steal-drugs-

5

meant-for-patients (Oct. 5, 2020) (last visited Jan. 7, 2026); Drug Abuse Among Doctors: Easy, Tempting, and Not Uncommon, https://gme.med.ufl.edu/files/2014/02/Drug-Abuse-Amon (Jan. 29, 2014) (last visited Jan. 7, 2026). As referenced in part below, in this district alone, the government has charged over a dozen drug diversion or tampering cases in the past several years. This demonstrates there is clearly a need for general deterrence. There is also a need for specific deterrence to ensure this defendant does not repeat her choices, especially in the event that she successfully completes the Substance Abuse and Rehabilitation Program. There is no doubt that the defendant has attempted to get her life on track and that the defendant has accepted responsibility for the charged conduct, as distinguished from the relevant conduct detailed in the statement of facts. Her hesitation to do so with respect to the relevant conduct unfortunately gives the government pause as to her full acceptance of responsibility.

      C. <u>The Requested Sentence is Consistent with Other Sentences Ordered for Similar Crimes</u>

The government's recommended sentence is appropriate when compared to sentences received by other defendants in drug diversion cases. The following is a chart of recent diversion cases from various federal jurisdictions, including Massachusetts:

| Date of Sentencing | Case Name | District | Summary | Sentence Received |
|---|---|---|---|---|
| 11/14/2023 | *United States v. Andrea Falzano*[3] | District of Massachusetts | Falzano withdrew substances 412 times for already discharged patients over an approximately five-month period. | 3 months imprisonment |

---

[3] https://www.justice.gov/usao-co/pr/colorado-nurse-sentenced-prison-stealing-controlled-substances (last visited Jan. 7, 2026).

| Date of Sentencing | Case Name | District | Summary | Sentence Received |
|---|---|---|---|---|
| 5/8/2023 | *United States v. Lisa Tarr*[4] | District of Massachusetts | Defendant stole and self-injected fentanyl from hospital on one occasion and patient on another occasion as well as hydromorphone, a Schedule II controlled substance. | 5 years of probation |
| 2/17/2023 | *United States v. Jessica Lotto*[5] | District of Massachusetts | Defendant stole fentanyl being administered to a critical care patient. | 3 months imprisonment |
| 09/18/2021 | *United States v. Kurt Vasquez*[6] | District of Colorado | Defendant nurse ordered more fentanyl, midazolam, and propofol than was necessary for procedures and kept the excess for himself. Defendant falsely documented in patient charts that he had administered drugs that he had not. | 3 months imprisonment |
| 11/27/2019 | *United States v. La Vang*[7] | District of Minnesota | Defendant working as a home healthcare nurse for an 80-year-old woman recovering from multiple surgeries stole oxycodone and hydrocodone from his patient and replaced the pills with loratadine and acetaminophen. During this time, the victim's health declined precipitously. | 18 months imprisonment |

---

[4] https://www.justice.gov/usao-ma/pr/former-nurse-sentenced-stealing-drugs-two-boston-area-hospitals (last visited Jan. 7, 2026).

[5] https://www.justice.gov/usao-ma/pr/pittsfield-nurse-sentenced-stealing-fentanyl-critical-care-patient (last visited Jan. 7, 2026).

[6] https://www.justice.gov/usao-co/pr/colorado-nurse-sentenced-prison-stealing-controlled-substances (last visited Jan. 7, 2026).

[7] https://www.justice.gov/usao-mn/pr/registered-nurse-sentenced-18-months-federal-prison-stealing-opioids-elderly-patient (last visited Jan. 7, 2026).

| Date of Sentencing | Case Name | District | Summary | Sentence Received |
|---|---|---|---|---|
| 02/14/2019 | *United States v. James Allen Moorehead*[8] | Northern District of Iowa | Defendant nurse stole hydrocodone pills by using patient identities. Defendant concealed scheme by making false entries in patient medical records. Defendant administered Tylenol to patients instead of hydrocodone. Multiple patients reported increased pain. Defendant had nursing license revoked for similar conduct in 2008. | 3 years imprisonment |
| 04/28/2018 | *United States v. Marlene Gilmore*[9] | District of Colorado | Defendant nurse stole fentanyl, morphine, and hydromorphone from a locked automated dispensing machine. | 4 months imprisonment |

While the above drug diversion cases offer some comparable examples, sentencing comparisons, including JSIN data, are never apples to apples. None of the conduct described above squarely matches the exact facts leading to the defendant's crime. Still, when comparing the defendant's conduct to that of other nurses who committed drug diversion crimes, the requested sentence is consistent with the sentences outlined in this memorandum.

IV.    Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose the

---

[8] https://www.justice.gov/usao-ndia/pr/mason-city-nurse-sentenced-three-years-federal-prison-stealing-pain-medication-over (last visited Jan. 7, 2026), defendant also pleaded guilty to one count of false statements relating to health care matters, and one count of aggravated identity theft.

[9]  https://www.justice.gov/usao-co/pr/nurses-sentenced-prison-stealing-opioids-colorado-hospitals (last visited Jan. 7, 2026).

8

sentence of incarceration for 3 months, supervised release for 12 months, and a mandatory special assessment of $100.

>                              Respectfully submitted,
>
>                              LEAH B. FOLEY
>                              UNITED STATES ATTORNEY
>
>                       By:    /s/ Mackenzie A. Queenin
>                              Mackenzie A. Queenin
>                              Chief, Health Care Fraud Unit

Date: January 7, 2026

Certificate of Service

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                                    */s/ Mackenzie A. Queenin*
                                                  Mackenzie A. Queenin
                                                  Assistant United States Attorney

Date: January 7, 2026